Revised March 30, 1999

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-30212
_____

CONSTANCE CHAIX INDEST,

Plaintiff-Appellant,

versus

FREEMAN DECORATING, INC. and
LARRY ARNAUDET

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

January 19, 1999

Before JONES, and WIENER, Circuit Judges, and FURGESON[*], District
Judge.

EDITH H. JONES, Circuit Judge:

        Constance Chaix Indest sued Freeman Decorating, Inc. and

its Vice President of Sales and Administration Larry Arnaudet

alleging that she had been sexually harassed in violation of Title

VII.  The district court granted Arnaudet's motion to dismiss for

_____

        [*] District Judge of the Western District of Texas, sitting by
designation.

failure to state a claim against him under Fed. R. Civ. P. 12(b)(6). Later, the district court granted Freeman's motion for judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Indest appeals both of these decisions.

As to Arnaudet, the law affords Indest no Title VII claim against a company employee. The more challenging question is whether Freeman is entitled to judgment as a matter of law following this year's Supreme Court decisions concerning employer liability for sexual harassment by a supervisor. *See Faragher v. City of Boca Raton*, 118 S.Ct. 2275 (1998); *Burlington Indus., Inc. v. Ellerth*, 118 S.Ct. 2257 (1998). We hold that, because Freeman promptly and effectively responded to Indest's equally prompt complaint, vicarious liability is inappropriate. The judgment is affirmed.[*]

### I.  BACKGROUND

Freeman, a subsidiary of The Freeman Companies ("TFC"), provides services to convention sponsors and exhibitors. Arnaudet is a Freeman vice-president responsible for the company's overall sales strategy and related policies, procedures, and systems. Additionally, he serves as the account executive for several major annual trade shows and is in charge of all Freeman employees who work at the trade shows. Appellant Indest was employed by Freeman

---

[*]Judges Wiener and Furgeson concur in the judgment only. Judge Wiener reserves the right to file a separate opinion at a later date.

as an exhibitor services representative at one of its branch offices in New Orleans.  As of the time this appeal was argued, Indest continued to work for Freeman.

Indest worked at a convention lasting from September 8 through 14, 1993, where Arnaudet was the Freeman executive in charge. Four times, Arnaudet made crude sexual comments and sexual gestures to Indest while she was alone and in the presence of her immediate supervisor, Angie Richard, and her director, Dawn DiMaggio.[1]  On Friday evening, September 10, Indest was speaking with the director of sales and the national sales manager of the New Orleans office at a cocktail event when Arnaudet joined them and made another sexual comment to her.  Indest objected and warned him this was sexual harassment.  Arnaudet, incensed, ordered her not to threaten a vice-president, profanely disparaged her abilities as an employee, and said she must prove herself to him by working with him at a convention in Philadelphia.  Indest became agitated and started crying.  She took off from work the next day with her supervisor's approval.  No further incidents of sexual harassment occurred after this episode.

On September 13, Indest reported all of the incidents to Dawn DiMaggio, as well as to the branch office manager, Steve Hagstette.  Hagstette informed Dan Camp, TFC's human resources

---

[1]    Indest's EEOC complaint lists four separate remarks/gestures in addition to the confrontation at the cocktail event.

3

director in its Dallas corporate office. Indest was urged to contact Camp, and she spoke with him by telephone on September 20. Pursuant to Freeman's sexual harassment policy, Camp investigated the complaint, interviewing witnesses to the incidents, Indest's supervisors, and Arnaudet. Camp advised TFC's president and chairman, Don Freeman, of the complaints of Indest and of another incident that had occurred approximately six months earlier involving Arnaudet and another female employee (identified as "Jane Doe").

Freeman issued a verbal and written reprimand to Arnaudet, and Camp informed Indest of this reprimand in a conversation that took place on or about October 11. In that conversation, Camp also informed Indest that Arnaudet would apologize to her (an idea which Indest rejected), and asked Indest for suggestions for how to discipline Arnaudet. Indest said she wished to leave the disciplining of Arnaudet up to the company.

On October 14, Camp received a letter from Indest, revealing her intention to file an EEOC charge because she feared retaliation. Indest also expressed concern for retaliation when Camp called her to ask about the letter. On November 2, TFC sent Suzanne Bragg, a human resources employee, to reassure Indest that there would be no retaliation. Camp flew to New Orleans to visit Indest a week later. He informed her that Arnaudet would be suspended without pay for seven days and would be prohibited from attending the annual management and sales meeting that he had

4

historically organized and conducted. Camp promised that Indest would never again have to work at any trade shows where Arnaudet was present; he expressly guaranteed that her complaint would neither jeopardize her job nor inhibit her ability to advance within the company; and he told her the company would pay for any counseling she might need.

To demonstrate the company's concern about the incident at the highest level, Freeman personally confirmed Arnaudet's disciplinary action in writing on November 15, in a letter that stated in part: "[The company is] particularly concerned that there never be any discriminatory action taken against Connie Indest in retaliation [for] her complaint. It is vitally important that there be no future instances of sexual harassment of our employees by you." Freeman also advised an executive committee, composed of Arnaudet's contemporaries and superiors, of Arnaudet's conduct and resulting punishment.

Indest has received periodic pay raises since the incident, and she concedes that Arnaudet has not further harassed her. She does not allege that Arnaudet has subsequently harassed any other employee.

As a result of the episode, Indest states she has suffered the recurrence of an obsessive-compulsive disorder called trichotillomania (hair-pulling), anxiety, and sleeplessness, and has sought and received counseling. Indest filed an EEOC charge of sex discrimination and harassment. After receiving a right-to-sue

5

letter, she sued Freeman and Arnaudet. The district court dismissed her claims against Arnaudet because he cannot be sued individually or in his official capacity under Title VII. The court granted judgment as a matter of law to Freeman, holding that whether or not Arnaudet was a supervisor and regardless whether his actions could be termed *quid pro quo*[2] or hostile environment[3] sexual harassment, the company took prompt remedial action that absolved it of liability. Indest appealed, and the EEOC has filed an amicus brief.

## II. STANDARD OF REVIEW

A district court's ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss is reviewed *de novo*. *Barrientos v. Reliance Standard Life Ins. Co.*, 911 F.2d. 1115, 1116 (5th Cir. 1990). Additionally, "[w]e must accept all well-pleaded facts as true, and we view them in the light most favorable to the plaintiff. We may not look beyond the pleadings. A dismissal will not be affirmed if the allegations support relief on any possible theory." *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

The grant of summary judgment is reviewed *de novo*, applying the same standards as the district court. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

---

[2] *See, e.g., Webb v. Cardiothoracic Assocs. of North Tx.*, 139 F.3d 532, 539-40 (5th Cir. 1998).

[3] *See, e.g., Jones v. Flagship Int'l*, 793 F.2d 714, 719-21 (5th Cir. 1986).

6

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The movant must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the movant does so, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Evidence is viewed in the light most favorable to the nonmoving party. *See Duffy*, 44 F.3d at 312.

### III. ANALYSIS

#### A. Individual Liability Under Title VII.

Arnaudet sought dismissal for failure to state a claim against him pursuant to Fed. R. Civ. P. 12(b)(6). The district court applied settled Fifth Circuit law in holding that employees may not be sued for damages in their individual capacities. The court also reasoned that it would be redundant for Indest to sue both Arnaudet in his official capacity and Freeman, because Freeman would bear responsibility for the liability of either party through Title VII's incorporation of the principle of vicarious liability.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

7

individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). While Title VII defines the term employer to include "any agent" of an employer, *id.* § 2000e(b), this circuit does not interpret the statute as imposing individual liability for such a claim. *See Pfau v. Reed*, 125 F.3d 927, 935-36 (5th Cir. 1997).[4] Congress's purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate *respondeat superior* liability into Title VII. *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *see also Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). Thus, a Title VII suit against an employee is actually a suit against the corporation.

This court has also concluded that "outside of an action against an officer personally, a plaintiff does not have an action against both the corporation and its officer in an official capacity." *Sims v. Jefferson Downs Racing Assoc., Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985) (suit brought under 42 U.S.C. § 1983).

---

[4] *See also Wathen v. General Elect. Co.*, 115 F.3d 400, 404 (6th Cir. 1997) (noting that a majority of the circuits considering suits against the agent of an employer "have held that an employee/supervisor, who does not otherwise qualify as an 'employer,' cannot be held individually liable under Title VII and similar statutory schemes"); *Grant v. Lone Star Co.*, 21 F.3d 649, 651 (5th Cir. 1994). ("We have refused to impose liability for backpay on individual public employees. [The plaintiff] offers no persuasive argument why Congress would not have intended to protect private employees, as well, from individual title VII liability."); Harvey v. Blake, 913 F.2d 226, 227 (5th Cir. 1990) (holding that the doctrine of qualified immunity does not protect a government official who is sued in an official capacity under Title VII because Title VII does not impose personal liability).

Here, the district court dismissed Arnaudet as a defendant based on the logic of *Sims* and an Eastern District of Louisiana case, *Allen v. Tulane Univ.*, No. CIV.A.92-4070, 1993 WL 459949 (E.D. La. Nov. 2, 1993), which specifically found that the "Plaintiff is not entitled to maintain an action against both a corporation and its agent in an official capacity [in a Title VII action] because effectively the corporation could be held liable twice for the same act." *Allen*, 1993 WL 4569949, at *4.[5] We agree that in accordance with *Sims*, a party may not maintain a suit against both an employer and its agent under Title VII.

**B. Employer Liability for the Acts of Employees Under Title VII.**

The district court held that Indest had the burden of proving that Freeman knew or should have known of the alleged

---

[5] Aside from the instant case and *Allen*, several other cases in the Eastern District of Louisiana have dismissed claims against supervisors in their official capacities when the plaintiff also sued the corporation under Title VII. *See Davillier v. State through Dep't. of Health and Hosps.*, No.CIV.A.96-4169, 1997 WL 276091, at *1 (E.D. La., May 22, 1997); *Oubre v. Entergy Operations*, *Inc.*, No.CIV.A.95-3168, 1996 WL 28508, at *2 (E.D. La. Jan. 22, 1996), *aff'd*, 102 F.3d 551 (5th Cir. 1996) (per curiam), *rev'd on other grounds*, 118 S.Ct. 838 (1998); *Minshew v. Brown*, No. 95-2507, 1996 WL 3916, at *2 (E.D. La. Jan. 4, 1996). *But see Douglas v. DynMcDermott Petroleum Operations Co.*, No.CIV.A. 95-1967, 1996 WL 365671, at *4 (E.D. La. July 2, 1996) (permitting suit against both supervisor and company in a Title VII suit despite objections raised by the defendants), *rev'd on other grounds*, 144 F.3d 364 (5th Cir. 1998).

harassment and failed to take prompt remedial action.[6]  Based on Freeman's prompt, humiliating punishment of Arnaudet, including verbal and written reprimands, suspension without pay for a week, and banishment from his own sales meeting, and based upon the complete cessation of harassment following this incident, the district court concluded that Freeman's actions were sufficiently swift and effective to preclude corporate vicarious liability for Arnaudet's conduct.

Before this year's trilogy of Supreme Court Title VII cases appeared, Indest and the EEOC advocated imposing strict liability on Freeman by arguing that the "defense" of prompt remedial action does not apply in two situations:  1) when a plaintiff alleges a *quid pro quo* claim arising from the actions of a supervisor or other manager who relies on delegated authority, and 2) when the alleged harasser in a hostile work environment case is a supervisor or manager who used actual or apparent authority, or was merely aided by the existence of an agency relationship, in committing the harassment.

---

[6]  The district court relied upon *Sims v. Brown & Root Indus. Servs., Inc.*, 889 F. Supp. 920 (W.D. La. 1995), *aff'd*, 78 F.3d 581 (5th Cir. 1996), which held that a plaintiff must prove the lack of prompt and remedial action to maintain either a hostile work environment or *quid pro quo* sexual harassment claim. *See id.* at 925.  The *Sims* decision also stated that this element must be proved even when the alleged harasser is the employee's supervisor. *See id.* at 927.  This court affirmed *Sims* in an unpublished opinion, which, according to our court's policy, is not a precedential decision.

The recent Supreme Court decisions guide our analysis. They shed light on what constitutes an actionable claim for a sexually hostile working environment. *See Oncale v. Sundowner Offshore Servs., Inc.*, ___ U.S. ___, 118 S.Ct. 998 (1998). They resolve the circuit split over the standard of employer liability for sexual harassment perpetrated by a supervisor. *See Faragher*, 118 S.Ct. 2275; *Ellerth*, 118 S.Ct. 2257. And they reaffirm that *Meritor*'s rejection of automatic liability for employers, although modified, remains a fundamental limit on Title VII liability. *Faragher*, 118 S.Ct. at 2285-86; *Ellerth*, *118 S.Ct. at 2268-70.*

In *Oncale*, the Court principally decided that Title VII applies to claims of same-sex harassment. But the Court also emphasized that Title VII is not a general civility code for the American workplace:

> We have always regarded that requirement [of objectively offensive, severe and pervasive conduct] as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace -- such as male-on-male horseplay or intersexual flirtation -- for discriminatory "conditions of employment."
>
> Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

11

*Oncale*, 118 S.Ct. at 1003.  In *Faragher*, the Court concluded a discussion of the demanding standards for a sexual hostile environment claim by stating:

> We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the courts of appeals have heeded this view.

118 S.Ct. at 2284.  *Faragher* cited approvingly a Fifth Circuit case in which the utterance of an offensive ethnic or racial slur did not sufficiently alter the terms and conditions of employment to violate Title VII.  *Id*. at 2283 (citing *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)).  *Faragher* repeated the holding in *Harris*[7] that:

> in order to be actionable under the statute, a sexually objectional environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so.  We directed courts to determine whether an environment is sufficiently abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offense utterance; and whether it unreasonably interferes with an employee's work performance."

*Faragher*, 118 S.Ct. at 2283 (citations omitted) Finally, *Ellerth* underscored that:

> For any sexual harassment [apart from a tangible adverse] employment decision to be

---

[7]  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-71 (1993).

12

actionable, however, the conduct must be severe or pervasive.

*Ellerth*, 118 U.S. 2265.

Taken together, these cases hold that sexual harassment which does not culminate in an adverse employment decision must, to create a hostile work environment, be severe or pervasive. Incidental, occasional or merely playful sexual utterances will rarely poison the employee's working conditions to the extent demanded for liability. Discourtesy or rudeness, "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in "'terms and conditions of employment.'" *Faragher*, 118 S.Ct. at 2283. All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment. *See, e.g., Faragher*, 118 S.Ct 2275; *Ellerth*, 118 S.Ct. 2257; *Oncale*, 118 S.Ct. 998; *Harris* 510 U.S. 17, 114 S.Ct. 367 (1993); *Meritor Sav. Bank, FSB v. Vinson* 477 U.S. 57, 106 S.Ct. 2399 (1986). The extreme facts recited in those cases highlight the intensity of the objectionable conduct that must be present in order to constitute an actionable hostile environment claim.[8]

---

[8] What constitutes an actionable claim for a sexual hostile working environment is a fact-sensitive determination, but the Supreme Court's decisions strongly suggest that such allegations are not invariably to be resolved by the jury. According to the

13

In light of this demanding standard, it is difficult to conclude that the conduct to which Indest was briefly subjected created a sexually abusive overall working environment. This is not to say that Arnaudet behaved like a gentleman or a responsible company officer. On the contrary, his crude remarks and implied threat deserved censure. As far as the entire context of Indest's employment with Freeman is concerned, however, Arnaudet's misbehavior was neither severe nor pervasive. She only complained about working with him on one occasion. His vulgar remarks and innuendos (about his own anatomy) were no more offensive than sexual jokes regularly told on major network television programs. Significantly, Arnaudet never touched Indest. His "threat" to Indest to "prove herself to him" was far more ambiguous than those uttered in *Ellerth*.[9] Not only was it hollow, because Indest knew and invoked the company policy against sexual harassment, but it invited the company's immediate reprisal upon Arnaudet himself.

---

Court, this claim is undergirded by requirements of severity and pervasiveness, viewed in the plaintiff's entire employment context from an objective standpoint. Cases will vary widely, as there is a continuum of sexually-categorized behavior ranging from the use of diminutives like "sweetie-pie" on one extreme to physical assault on the other, and the commingling of particular conduct, words and working environments may form a complex stew. But claims of non-severe, non-pervasive harassment are excluded from Title VII. Motions for judgment as a matter of law can police the baseline for hostile environment claims.

[9] *Ellerth*, 118 S.Ct. at 2262 (noting that supervisor told employee that he could make her life at the company "very hard or very easy").

Whether Indest was subjected to a sexually hostile working environment might be a close question on this summary judgment record, but it is a question that we do not need to address, because there is another basis on which Indest's claim falls short.  Indest cannot establish a basis for Freeman's liability as her employer.  The Supreme Court's decisions in *Ellerth* and *Faragher* articulate and recapitulate some, but not all, standards for employer liability.  First, the cases distinguish between supervisory conduct that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment," and hostile environment conduct which does not have this effect.  *Ellerth*, 118 S.Ct. 2270.  When the harassment resulted in a tangible adverse employment decision, it is actionable under Title VII because it has *ipso facto* changed the terms and conditions of the plaintiff's work.  *See id*.  This case involved only alleged hostile environment conduct under the Court's new distinction.

Second, the Court articulated a test of liability:

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor . . . . When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.  The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably

15

> failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. . . . No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Id.* (citation omitted).

Further, in *Faragher*, the Court approved the "myriad cases" in which lower courts have held employers liable where the employer, or its high-level officials, had actual knowledge of harassing action by subordinates or co-workers and did nothing to stop it. 118 S.Ct. at 2284. The Court also reaffirmed the cases that impose liability on the employer for negligence, where it knew of should have known of sexual harassment by an employee's co-workers and failed to stop it. *See id*. at 2285. The Court explained that liability may be fastened on an employer for the acts of its official who is "indisputably within that class . . . who may be treated as the organization's proxy," like the corporate president in *Harris*. *Faragher*, 118 S.Ct. at 2284. While *Ellerth* and *Faragher* do not delineate the difference between a supervisor and co-worker of the plaintiff employee, they state that vicarious liability will result from the conduct of "a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 118 S.Ct. at 2293; *Ellerth*, 118 S.Ct. at 2270.[10]

---

[10] Freeman states that Arnaudet was not, as a matter of law, Indest's supervisor, because Indest reported to and received

16

*Ellerth and Faragher* do not, however, directly speak to the circumstances before us, a case in which the plaintiff quickly resorted to Freeman's policy and grievance procedure against sexual harassment, and the employer took prompt remedial action. The Supreme Court cases both involve complaints of longstanding supervisor misbehavior, and the plaintiffs either never utilized or claimed not to be aware of the company policies. But for purposes of imposing vicarious liability, a case presenting only an incipient hostile environment corrected by prompt remedial action should be distinct from a case in which a company was never called upon to react to a supervisor's protracted or extremely severe acts that created a hostile environment. Although the *Ellerth/Faragher* standard, which imposes vicarious liability subject to an employer's two-prong affirmative defense, does not control, it informs the principles determinative of this case.

First, when a plaintiff promptly complains about a supervisor's inappropriate sexual actions, she can thwart the creation of a hostile work environment. To the extent redress is sought, is justified, and is adequately provided by the company, the complained-of incidents will not likely have become severe or pervasive enough to create an actionable Title VII claim. This result effectuates the purpose of Title VII, which cannot guarantee

---

employee evaluations directly from other company personnel. Because this point was not briefed, we do not consider it.

17

civility in the American workplace but, at its best, inspires prophylactic measures to deter unwanted sexual harassment. By promptly invoking a company's grievance procedure, a plaintiff has received the benefit Title VII was meant to confer. In such cases, an actionable hostile environment claim will rarely if ever have matured.

Second, the company's swift response to the plaintiff's complaint should have consequences for its vicarious liability exposure precisely because the company forestalled the creation of a hostile environment. In cases like *Ellerth*, by contrast, the plaintiff's failure or delay in invoking anti-harassment procedures may suggest that a company lacked vigilance or determination to enforce them or that it appeared to turn a blind eye toward sexual harassment. The *Ellerth/Faragher* test more cautiously exempts an employer from liability in the latter situation than is appropriate when a company has promptly reacted to a harassment claim and averted further distress.

A third, more fundamental reason also justifies distinguishing the *Ellerth/Faragher* test from the case before us. The Supreme Court felt obliged to square its new limited vicarious liability standard "with *Meritor*'s holding that an employer is not 'automatically' liable for harassment by a supervisor who creates" a sexually hostile working environment. *Faragher*, 118 S.Ct. at 2278. *Meritor* rejected imposing strict Title VII liability on

employers for such claims. 477 U.S. at 72, 106 S.Ct. at 2408. *Meritor* was left in place in the Court's recent cases because of *stare decisis* and because, as the Court noted, Congress conspicuously left *Meritor* intact even as it modified other aspects of Title VII law in 1991. Most important, the Court acknowledged that *Meritor* furthers the twin deterrent and compensatory aims of Title VII. As *Faragher* put it:

> It would therefore implement clear statutory policy and complement the Government's Title VII enforcement efforts to recognize the employer's affirmative obligation to prevent violations and give credit here to employers who make reasonable efforts to discharge their duty. Indeed, a theory of vicarious liability for misuse of supervisory power would be at odds with the statutory policy if it failed to provide employers with some such incentive.

118 S.Ct. at 2292.

Imposing vicarious liability on an employer for a supervisor's "hostile environment" actions despite its swift and appropriate remedial response to the victim's complaint would thus undermine not only *Meritor* but Title VII's deterrent policy. Vicarious liability would amount to strict liability even though the plaintiff had suffered neither a severe and pervasive change in her working conditions nor any adverse employment action. A holding of vicarious liability would conflict with cases, specifically approved by the Court, in which an employer's liability for co-worker sexual harassment is governed by a negligence standard, and the employer is liable only if it knew or

19

should have known and failed to take proper remedial steps. *See Faragher*, 118 S.Ct. at 2285-86. A standard imposing vicarious liability notwithstanding the employer's having nipped a hostile environment in the bud would also conflict with the premise of *Ellerth/Faragher*, founded in agency law, that a supervisor who creates a hostile environment is aided by his agency status with the employer in doing so. *See Faragher*, 118 S.Ct. 2285, 2290. Where the company, on hearing a plaintiff's complaint about inappropriate sexual behavior, moves promptly to investigate and stop the harassment, it eradicates any semblance of authority the harasser might otherwise have possessed.[11]

Finally, *Faragher*'s discussion of the avoidable consequences doctrine and an employee's duty to mitigate damages supports relieving the employer from liability in circumstances like those before us. *Faragher* explains the relevance of these concepts while discussing the prong of the affirmative defense that requires an employer to prove the employee's "unreasonable" failure to take advantage of company policies to avoid sexual harassment:

> If the victim could have avoided harm, no
> liability should be found against the employer
> who had taken reasonable care, and if damages
> could reasonably have been mitigated no award

---

[11] *Faragher* emphasized that agency law principles furnish no more than a starting point in analysis of Title VII employer liability. 118 S.Ct. at 2290 & n.3. While the Court goes on to balance vicarious liability with the employer's affirmative defense on the facts before it, we do not believe agency law implies vicarious liability in the present case.

20

> against a liable employer should reward a plaintiff for what her own efforts could have avoided.

*Id*. at 2292. *Faragher* implies that a plaintiff should not wait as long as it usually takes for a sexually hostile working environment to develop when the company has an effective grievance mechanism. If the plaintiff complains promptly, the then-incidental misbehavior can be stymied before it erupts into a hostile environment, and no actionable Title VII violation will have occurred.

Applying the foregoing analysis to Indest's case, we hold that because she promptly complained of Arnaudet's harassing conduct, and because the company promptly responded, disciplined Arnaudet appropriately and stopped the harassment, the district court properly granted judgment as a matter of law to Freeman. Even if a hostile work environment claim had been stated, which is dubious, Freeman's prompt remedial response relieves it of Title VII vicarious liability.

C.    **Employer Liability for Failing to Prevent Sexual Harassment**

In a final effort to find a genuine issue of material fact, Indest and EEOC assert that Title VII liability may be imposed on Freeman because of its inadequate discipline of Arnaudet after a previous complaint involving another Freeman employee, "Jane Doe." There is insufficient evidence in the record, however,

from which the details of the Jane Doe incident can be ascertained or compared with this case.  We find no merit in these contentions.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

WIENER, Circuit Judge, Specially Concurring:

Like my able colleague, Judge Jones, I would affirm the district court's dismissal of Indest's claim against her supervisor, Arnaudet, pursuant to Rule 12(b)(6).  And like Judge Jones, I would also affirm the court's dismissal of Indest's claims against Freeman by granting its motion for a judgment as a matter of law (j.m.l.), albeit I would do so — as would Judge Jones — for reasons other than those given by the district court.  But, as I would affirm the district court's j.m.l. for significantly

different reasons than those advanced by Judge Jones, I write separately.[12]

In short, I cannot agree with Judge Jones's conclusion that the Supreme Court's remarkably straightforward and perfectly consistent twin opinions in <u>Burlington Industries, Inc. v. Ellerth</u>[13] and <u>Faragher v. City of Boca Raton</u>[14] do not control the present case — and, indeed, all cases in which the plaintiff seeks to hold his employer vicariously liable for a supervisor's sexual harassment. As I read them, the Court's two opinions together set forth a comprehensive framework for determining when an employer can be held vicariously liable for sexual harassment by a supervisor — a framework into which the instant case fits comfortably.

Under the <u>Ellerth</u>/<u>Faragher</u> rubric, an employer is vicariously liable for a supervisor's actionable hostile environment[15] sexual

---

[12]  Because Judge Ferguson concurs only in the judgment of this case without concurring in Judge Jones's opinion or mine, neither enjoys a quorum and thus neither writing constitutes precedent in this Circuit.

[13]  118 S. Ct. 2257 (1998).

[14]  118 S. Ct. 2275 (1998).

[15]  Although the Court in <u>Ellerth</u> notes that the terms "hostile environment" and "quid pro quo" had taken on a significance beyond their utility in the wake of its opinion in <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57 (1986), the Court instructs that henceforth those terms' only utility will be to mark a useful boundary between supervisor sexual harassment cases involving "tangible employment actions" against the victim (quid pro quo), <u>see</u> <u>infra</u> note 19, and those in which the actionable conduct fails to produce a tangible employment action (hostile work environment). <u>Ellerth</u>, 118 S. Ct. at 2264-65.

harassment of an employee unless the employer can prove both elements of the one and only affirmative defense now permitted by the Court. Those essential elements are defined by the Court as:

> (a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the employee [] unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[16]

As it is undisputed that Freeman cannot satisfy the second element of this defense — that Indest unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise — Freeman is vicariously liable to Indest; unless, of course, Indest cannot prove that the conduct of the supervisor, Arnaudet, was "sufficiently severe or pervasive"[17] to constitute "actionable" sexual harassment of the hostile work environment kind. For, if Arnaudet's conduct does not rise to the level of actionable sexual harassment, Indest cannot recover from Freeman in agency.

As I conclude that Arnaudet's conduct was neither severe nor pervasive, I would affirm the district court for Indest's failure to demonstrate that Arnaudet's behavior constituted actionable sexual harassment in the first place. Such a result is compelled

---

[16] Faragher, 118 S. Ct. at 2292; Ellerth, 118 S. Ct. at 2270.

[17] Ellerth, 118 S. Ct. at 2264.

24

in this hostile work environment case (no tangible employment action), because, in such a case, proving the supervisor's conduct was "severe or pervasive", i.e., "actionable" harassment, is the threshold for recovery from an employer on a theory of vicarious liability. I am convinced, however, that in light of <u>Ellerth</u> and <u>Faragher</u>, we cannot affirm the district court's rejection of Indest's claim solely on the basis of Freeman's prompt and adequate response to Indest's report of Arnaudet's inappropriate behavior (as would Judge Jones, without any mention whatsoever of the second element of the sole affirmative defense now available). Given that (1) Judge Jones has conceded <u>arquendo</u> that the harassment produced a "severe or pervasive" work place, and (2) the undisputed facts of the case demonstrate that Indest quickly reported Arnuadet's behavior, thereby defeating the only affirmative defense potentially available to Freeman, Judge Jones's exoneration of Freeman's vicarious liability on but one element of the Court's new and exclusive two-element, conjunctive defense cannot survive scrutiny under <u>Ellerth</u>/<u>Faragher</u>.

## I.
### Facts, Proceedings, and Standard of Review

As I take no issue with Judge Jones's rendition of the facts, procedural history, standard of proof, or standard of review, I touch on those matters only briefly, for focus and emphasis. First, nothing in the record or in the appellate briefs of the parties reflects any business or personal interaction between

25

Arnaudet and Indest prior to the New Orleans convention of September 8-14, 1993, at which the putative harassment is alleged to have transpired. Second, the harassment that Indest alleged consisted solely of five sexual comments or gestures, and did not culminate in a tangible employment action. Third, Arnaudet's behavior was reported to Freeman by Indest almost instantly, even before she left the convention to return home. Fourth, there is no disagreement with the characterization of Arnaudet as a mid-level supervisor: As Vice President of Sales and Administration and, in particular, as the Freeman executive in charge of the New Orleans convention, Arnaudet was in a position to affect significantly the conditions of Indest's employment.[18] Finally, the scant evidence in the record of the only prior incident of purported sexual harassment by Arnaudet of a "Jane Doe" employee of Freeman is insufficient to support an allegation that Freeman (1) knew or should have known that Arnaudet had previously harassed another employee, and (2) failed to prevent a recurrence.

## II.
### Employer's Vicarious Liability for
### Actionable Sexual Harassment by a Supervisor

Last term, the Supreme Court decided four cases that together reshape, or at a minimum substantially clarify, the landscape of

---

[18] See Faragher, 118 S. Ct. at 2293 ("An employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.") (emphasis added); Ellerth, 118 S. Ct. at 2270 (same).

sexual harassment law.[19]  Most significantly for our purposes, two of those cases —— Ellerth and Faragher —— address the burgeoning issue of the employer's vicarious liability under Title VII for the sexual harassment of an employee by a supervisor.  Because I respectfully but strenuously differ with Judge Jones as to the meaning, scope, and import of these tandem opinions, I discuss them in some detail.  First, however, because I failed to file my separate opinion contemporaneously with hers, I briefly recount Judge Jones's position.

A.    Judge Jones's Analysis

Judge Jones's opinion (1) assumes arguendo that the alleged harassment at issue in this case was "sufficiently severe or pervasive"[20] to constitute actionable sexual harassment[21] —— an assumption to which I shall return; and (2) concludes that the Ellerth/Faragher teachings do not dictate the result of the present

---

[19]    See id. at 2293-94 (holding city vicariously liable as employer for harassment of lifeguard by her supervisor because city failed to exercise reasonable care to prevent harassing behavior); Ellerth, 118 S. Ct. at  2270 (holding employee could state claim against employer although she had suffered no adverse job consequences as a result of alleged sexual harassment by supervisor); Gebser v. Lago Vista Ind. Sch. Dist., 118 S. Ct. 1989, 1999-2000 (1998) (holding school was not vicariously liable under Title IX for teacher's sexual harassment of student when school had no notice of harassment); Oncale v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998, 1003 (1998) (holding same-sex harassment is actionable).

[20]    Ellerth, 118 S. Ct. at 2264.

[21]    Indest v. Freeman Decorating, Inc., 164 F.3d 258, 263-64 (5th Cir. 1998) (Jones, J.) [hereafter, Jones Op.].

27

appeal.[22]  Judge Jones bases this conclusion on her belief that Ellerth and Faragher are factually distinguishable from the instant case because "both involve complaints of longstanding supervisor misbehavior, and the plaintiffs either never utilized or claimed not to be aware of company policies," whereas Ms. Indest quickly resorted to Freeman's sexual harassment grievance procedure and Freeman promptly took remedial action that prevented Arnaudet's short-lived harassment of Indest from continuing long term.[23]  To distinguish and cordon off Indest's brief but presumed "severe or pervasive" harassment experience so as to remove her case from the purview of Ellerth/Faragher, Judge Jones has coined the phrase "incipient hostile environment."[24]  As shall be seen, she advances that this new coin is not among those rightfully in the purses of Ms. Ellerth or Ms. Faragher, and proceeds to remove cases like Ms. Indest's from the aegis of Ellerth and Faragher —— as neat an illusion as any sleight-of-hand artist ever created with a real coin.

Judge Jones then proceeds to replace, with one of her own, the Supreme Court's balancing of what it identifies as relevant agency

---

[22]    Id. at 265.

[23]    Id. (emphasis added).

[24]    Id.  Judge Jones does not define her newly-minted term. Apparently, however, the phrase does not simply refer to conditions that are not yet sufficiently severe or pervasive to constitute an actionable hostile environment, as Judge Jones, by her assumption, preempts our resolution (though not discussion) of that issue.

principles on the one hand and Title VII policy concerns on the other. After performing her own balancing test in lieu of the Court's, Judge Jones concludes that alone Freeman's quick and adequate response to Indest's equally prompt and adequate reporting of Arnaudet's behavior is sufficient to insulate Freeman from vicarious liability for Arnaudet's harassment of Indest.[25] By thus choosing to disregard totally the Supreme Court's express and carefully explained linking of (1) the employer's prompt and appropriate response with (2) the employee's unreasonable <u>failure</u> to invoke the employer's complaint mechanism or otherwise take prompt mitigating action, Judge Jones somehow implicitly concludes that this harassment's "incipient" nature — whatever that is — alleviates Freeman's need to satisfy the second element of <u>Ellerth</u> and <u>Faragher</u>'s sole surviving affirmative defense, i.e., the requirement to prove that Indest unreasonably failed to take advantage of Freeman's sexual harassment grievance policy. Judge Jones never adequately explains away the obvious inconsistency of granting "severe and pervasive" status to the work environment produced by Arnaudet's conduct while labeling the effects of that very same conduct "incipient." Post-<u>Ellerth</u> and <u>Faragher</u>, this is a logical impossibility which, I submit, cannot be squared with the pellucid teachings of those opinions.

    B.    <u>Ellerth</u> and <u>Faragher</u>

---

[25]     <u>Id.</u> at 267.

Simply stated, then, I part company with Judge Jones because I can find no support in <u>Ellerth</u> or <u>Faragher</u> for her conclusion that those cases do not control this one.  In neither opinion does the Court even remotely hint that it is limiting its analysis to situations in which (1) the plaintiff employee has failed to inform an employer of harassing behavior, and (2) the employer has failed to take prompt remedial action (i.e., to Judge Jones's view of the facts of <u>Ellerth</u> and <u>Faragher</u>).  More importantly, nowhere does the Court imply, much less express, that short-lived harassment such as the conduct alleged by Indest — in which, soon after the onset of the harassment, the plaintiff reports the inappropriate behavior and the employer rapidly and appropriately responds to that report — somehow falls outside the ambit of the Court's mandate.  To the contrary, in both the <u>Ellerth</u> and <u>Faragher</u> opinions, the Court unmistakably addresses itself to the entire spectrum of an employer's vicarious liability under Title VII for supervisory harassment <u>writ large</u>, not just to some lesser fragment of that statutory problem, to which Judge Jones would curtail it.

1. <u>Ellerth</u>

From the inaugural lines of the <u>Ellerth</u> opinion, the Court makes clear that its focus is not narrowly confined to the discrete facts of Ellerth's allegations (whether as parsed by Judge Jones or otherwise).  The Court opens:

> We decide whether . . . an employee who refuses unwelcome and threatening sexual advances of a supervisor, yet suffers no

adverse, tangible job consequences, can recover against the employer without showing the employer is negligent or otherwise at fault for the supervisor's actions.[26]

Ellerth involves allegations by a plaintiff-employee (Ms. Ellerth) who, during the approximately year-long period that she worked as a salesperson for the defendant-employer (Burlington Industries), had been subjected to a number of boorish and offensive remarks and gestures by her supervisor (Ted Slowik).[27] Ellerth based her claim against Burlington in large part on three alleged incidents in which Slowick made comments that could be construed as threats to retaliate against her if she did not give in to his sexual advances.[28] Despite these threats, though, Ellerth never experienced any adverse employment consequences; in fact, she received a promotion.[29]

In determining whether Burlington could be held vicariously liable for Slowik's conduct even though his threats never resulted

---

[26]     Ellerth, 118 S. Ct. at 2262. Again, painting with a broad brush that belies Judge Jones's effort to cabin the opinion, the Court later frames its inquiry as "whether an employer has vicarious liability when a supervisor creates a hostile work environment by making explicit threats to alter a subordinate's terms or conditions of employment, based on sex, but does not fulfill the threat." Id. at 2265. The Court makes no mention of the extent or duration of the inappropriate conduct.

[27]     Id. at 2262.

[28]     Id.

[29]     Id.

in a tangible employment action against his subordinate,[30] the

_Ellerth_ Court confronts the previously unresolved question of what

standards govern an employer's _respondeat_ _superior_ liability for

sex-based discrimination by one of its supervisory employees.[31]  The

Court had touched on this critical issue in its pathbreaking

decision in _Meritor Savings Bank v. Vinson_,[32] but indicated only

that, based on the text of Title VII, agency principles are

relevant to the inquiry.[33]

Taking _Meritor_'s admonition as its starting point, the Court

in _Ellerth_ engages in a wide-ranging analysis of the relevant

agency principles set forth in § 219 of the Restatement (Second) of

Agency.[34]  The Court determines that, when an employee seeks to hold

---

[30]     _Id._  Tangible employment actions "require[] an official act
of the enterprise, a company act," _id._ at 2269, such as "hiring,
firing, failing to promote, reassignment with significantly
different responsibilities, or a decision causing a significant
change in benefits."   _Id._ at 2268.

[31]     _Id._ at 2264.  From a plaintiff-employee's perspective, there
are, of course, two categories of potential employee harassers ——
supervisors and co-workers.  Neither the instant case nor _Ellerth_
or _Faragher_ involved harassment by co-workers.

[32]      477 U.S. 57 (1986) (holding hostile environment sexual
harassment is actionable form of sexual discrimination under Title
VII).

[33]     _Id._ at 72.  The _Meritor_ Court rejected arguments of both
plaintiff —— that employer is strictly liable for harassment by its
supervisor —— and of defendant —— that mere existence of
discrimination grievance procedure, coupled with plaintiff's
failure to invoke that procedure, insulates employer from
liability. _Id._ at 72-73.

[34]     Restatement (Second) of Agency § 219 (1957).

an employer vicariously liable for a supervisor's conduct rather than directly liable for its own conduct,[35] Restatement § 219(2)(d)'s "aided in the agency relation" standard is the most relevant;[36] and concludes that, "beyond question," an employee satisfies this standard by proving that the supervisor took a tangible employment action against the subordinate, as such an action would not be possible but for the authority granted to the supervisor over the employee by the employer.[37] Thus, when a tangible employment action results (by definition post-Ellerth/ Faragher, a quid pro quo case), the Court follows strict agency principles and permits no affirmative defense to the employer's vicarious liability.

---

[35] To hold an employer liable for its own negligent conduct, an employee must show that the employer knew of the harassment and failed to stop it. Ellerth, 118 S. Ct. at 2267; see also Faragher, 118 S. Ct. at 2284 (noting employer can be held liable (1) for own negligence and (2) for the acts of an official who may be treated as the organization's proxy). The Court additionally determined that sexual harassment by a supervisor is not generally conduct falling within the scope of the supervisor's employment under § 219(1), thus subjecting an employer to automatic liability, though it noted that such a scenario is not out of the realm of possibility. Ellerth, 118 S. Ct. at 2266-67 (citing Sims v. Montgomery County Comm'n, 766 F. Supp. 1052, 1075 (M.D. Ala. 1990) (finding supervisor acted in scope of employment when employer had policy of discouraging women from seeking advancement and "sexual harassment was simply a way of furthering that policy.")).

[36] Section 219(2)(d) provides that an employer is liable for torts committed by its employee for acts committed outside the scope of the employee's employment if the employee "was aided in accomplishing the tort by the existence of the agency relation."

[37] Ellerth, 118 S. Ct. at 2268.

To resolve the more difficult issue — whether the agency relation aids in the commission of a supervisor's harassment that does <u>not</u> culminate in a tangible employment action against the subordinate employee — the Court takes additional, mitigating guidance from Title VII's twin deterrent goals of (1) encouraging employers to institute antiharassment policies and effective grievance procedures, and (2) encouraging employees to make timely and appropriate use of such procedures and report harassing behavior.[38]  Markedly absent from this entire discussion is any reference — much less any restriction — to the particular facts of Ellerth's case.  The Court's focus is squarely on the big picture.

Finally, after balancing the relevant concerns,[39] the Court unconditionally and unequivocally concludes:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.  <u>The defense comprises two necessary elements</u>: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior,

---

[38]     <u>Id.</u> at 2270.

[39]     In the sentence preceding the announcement of its new test, the Court states: "In order to accommodate the agency principles of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees, we adopt the following holding in this case and in <u>Faragher v. Boca Raton</u>, 118 S. Ct. 2275 (1998), also decided today."  <u>Id.</u>

<u>and</u> (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[40]

Again, nothing in the <u>Ellerth</u> opinion intimates that the Court is narrowly limiting its analysis or its test to the facts before it.[41] To the contrary, the Court (1) frames the issue presented without reference to the factual nuances on which Judge Jones relies in her effort to distinguish the instant case from <u>Ellerth</u>; (2) analyzes both the Restatement's relevant agency principles and Title VII policy goals in terms of the general question of an employer's vicarious liability for a supervisor's harassment; (3) formulates straight-forward and unqualified bright-line rules covering an employer's "vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor";[42] and (4) specifically dictates the role of the factor Judge Jones finds controlling in the present case — the reasonableness of the employer's efforts to prevent and address

---

[40]    <u>Id.</u> (emphasis added).

[41]    The Court, of course, applies its newly-created standard to the facts before it, holding that <u>Ellerth</u> had stated a claim against Burlington, but that Burlington should be afforded the opportunity to prove the affirmative defense to liability. <u>Id.</u> at 2271.

[42]    <u>Id.</u> at 2270. That the <u>Faragher</u> Court took occasion to identify avenues for holding an employer liable for harassment by one of its employees other than vicarious liability, <u>see</u> <u>supra</u> note 24 (employer can be held liable for own negligence or for employee harassment falling within scope of employee's duty), lends further support to the conclusion that the Court fixed its sight on the entirety of the global issue before it — vicarious liability — rather than some unidentified shard of the sexual harassment issue.

harassment —— by placing it within the confines of the Court's unique, double-element, affirmative defense to vicarious liability for cases in which no tangible employment action has been taken against the plaintiff.  Importantly, the Court also makes the failure of the employee to act promptly and effectively an equal and indispensable element of this defense; yet Judge Jones would permit the employer's extant grievance system and quick action to save the day even when the employee too timely takes appropriate steps.  This cherry-picking of but one of two conjoint elements of the defense flies directly in the face of identical statements to the contrary in each of the two Supreme Court opinions.[43]

### 2.  Faragher

The Faragher opinion follows a path virtually identical to Ellerth's.  It too frames the question presented as one involving the broad issue of an employer's vicarious liability for harassment by a supervisor: "This case calls for the identification of the circumstances under which an employer may be held liable under Title VII . . . for the acts of a supervisory employee whose sexual harassment of subordinates has created a hostile work environment amounting to employment discrimination."[44]  Like Ellerth, Faragher analyzes the issue without reference to the limitations Judge Jones

---

[43]    See Faragher, 118 S. Ct. at 2292-93; Ellerth, 118 S. Ct. at 2270.

[44]    Faragher, 118 S. Ct. at 2279.

would impose.[45]  Finally, of course, <u>Faragher</u> espouses verbatim the <u>Ellerth</u> test and sole affirmative defense for vicarious liability in supervisor sex discrimination cases.[46]

Indeed, as it explicitly adopts and precisely repeats <u>Ellerth</u>'s two-element, affirmative defense as an "<u>alternative to [an employer's] automatic liability</u>, the Court indicates in <u>Faragher</u> even more clearly than it does in <u>Ellerth</u> that its newly-articulated test applies to <u>all</u> cases in which an employee who has not suffered an adverse employment action seeks to hold the employer vicariously liable for purported harassment by a supervisor (rather than excluding some subset of such cases delimited by the absence of the employee's prompt report of the inappropriate conduct or the presence of the employer's quick response to such behavior by the supervisor — or both).[47]  In other words, the Court designed its "composite defense"[48] as the <u>only</u> hatch through which an employer might escape vicarious liability

---

[45]    <u>Id.</u> at 2286-93 (examining arguments in favor and against holding employer strictly liable for supervisor's conduct); <u>see also</u> <u>id.</u> at 2282 ("Since our decision in <u>Meritor</u>, Courts of Appeals have struggled to derive <u>manageable standards to govern employer liability for hostile environment harassment perpetrated by supervisory employees</u>.") (emphasis added).

[46]    <u>Id.</u> at 2292-93.

[47]    <u>Id.</u> at 2292.

[48]    <u>Id.</u>

when "harassment by a supervisor [] creates the requisite degree of discrimination."[49]

### 3.  Teachings of <u>Ellerth</u> and <u>Faragher</u>

In sum, I respectfully submit that neither the structure nor the plain language and holding of either <u>Ellerth</u> or <u>Faragher</u> supports Judge Jones's conclusion that cases such as this one, in which an employee promptly reports, and an employer rapidly responds to, harassing behavior by a supervisor, fall into some unarticulated lacuna in the <u>Ellerth</u>/<u>Faragher</u> framework.  I am convinced that this framework, and only this framework, controls our analysis.

### C.  <u>Merits</u>

Here, of course, the district court did not — indeed, could not — assay Indest's claim against Freeman under the Supreme Court's as yet unannounced <u>Ellerth</u>/<u>Faragher</u> framework. Nevertheless, when there are no genuine issues of material fact, we may affirm the district court's grant of a j.m.l. on different grounds.[50]

As already noted, there is no question that (1) Arnaudet was a supervisor with immediate (or successively higher) authority over Indest, and (2) no tangible employment action was taken against Indest.  Significantly, it is equally indisputable that Indest did

---

[49]     <u>Id.</u> at 2291.

[50]     <u>Cf.</u> <u>Rizzo v. Children's World Learning Ctr., Inc.</u>, 84 F.3d 758, 763 (5th Cir. 1996).

not unreasonably delay or fail to take advantage of any preventive or corrective opportunities provided by Freeman or fail to take appropriate action to avoid harm otherwise: As Judge Jones confirms, Indest reported Arnaudet's conduct almost immediately. Under the Ellerth/Faragher framework, this fact alone interdicts any attempt by Freeman to assert the one surviving affirmative defense and exposes the invalidity of excusing Freeman solely on the basis of its grievance system and prompt response, as proposed by Judge Jones.

Even so, our inquiry is not at an end. Inasmuch as Indest did not suffer a tangible employment action, she can hold Freeman vicariously liable only if she can prove that Arnaudet's conduct created an "actionable hostile environment."[51] As the Supreme Court held in Harris v. Forklift Systems, Inc.,[52] to satisfy this test, the conduct in question must have been so "severe or pervasive" that it altered the terms and conditions of Indest's employment.[53] The Court explicitly reconfirmed this requirement in both Ellerth[54]

---

[51] Faragher, 118 S. Ct. at 2292-93; Ellerth, 118 S. Ct. at 2270 (emphasis added).

[52] 510 U.S. 17 (1993).

[53] Id. at 21.

[54] Ellerth, 118 S. Ct. at 2265 ("For any sexual harassment preceding the employment decision to be actionable, however, the conduct must be severe or pervasive.")

and Faragher.[55]  As a key diversion in her legal legerdemain, Judge Jones pretermits consideration of this point by assuming arguendo that the supervisor's conduct was actionable, i.e., severe or pervasive.   This ploy enables her to label the incident as "incipient" essentially because it was so short-lived.  Yet we and other courts have recognized that, alone, the duration of sexually offensive misconduct is not determinative; it is merely one factor to consider.[56]  Any doubt about the inability of the duration of the harassment alone to be determinative is dispelled by the Court's continued use of the disjunctive "severe or pervasive"; indeed, sexually harassing conduct that is "severe" but not "pervasive" is by definition short-lived, Judge Jones's implication to the contrary notwithstanding.  With due respect to my worthy colleague, I can only read Ellerth and Faragher to specify that, in cases that do not involve a tangible employment action, the threshold question is whether the supervisor's misconduct is actionable, i.e., either

---

[55]    Faragher, 118 S. Ct. at 2283-84 (summarizing Harris standards for proving hostile environment claim and citing compilation of cases "granting summary judgment for employers because harassment was not actionably severe or pervasive") (citation omitted).

[56]    See, e.g., Butler v. Ysleta Ind. Sch. Dist., 161 F.3d 263, 269 (5th Cir. 1998)(listing "frequency of discriminatory conduct" as but one factor to consider and stating it should not be given "undue weight"); Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1072 (10th Cir. 1998)("We therefore disagree with defendants' assertions that a single incident of physically threatening conduct can never be sufficient to create an abusive environment."); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998)("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment . . . .")(citation and quotation omitted) (alteration in original).

40

severe or pervasive.  If that question is answered in the negative, the court can never reach the questions (1) whether the employer is vicariously liable, and (2) if so, whether the employer is able to avoid such liability by satisfying the affirmative defense crafted by the Court in Ellerth and Faragher.

To determine whether conduct is sufficiently severe or pervasive to create an objectively hostile or abusive work environment, we must examine the totality of the circumstances. These include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[57]

Indest alleges that, over a period that admittedly spanned less than one week, Arnaudet made five separate crude sexual comments or gestures to her and made statements that could be understood as ultimatums to "come across" with sexual favors or suffer adverse employment consequences.  None dispute that Arnaudet's behavior was clearly embarrassing and contemptible, boorish and offensive.  Under our jurisprudential standards, though, it was just as clearly not pervasive; neither did it even approximate the level required to be classified as severe.  As such, Arnaudet's conduct does not constitute actionable sexual

---

[57]    Harris, 510 U.S. at 23.

harassment.[58]  True, sexual comments alone can rise to the level of actionable harassment.[59]  Still, the mixed question of fact and law that we review de novo today — whether the relatively few remarks and gestures made during the relatively short duration of the New Orleans convention at which Indest was subjected to them, were so severe or pervasive as to alter the terms and conditions of Indest's employment within the meaning of Title VII — is, to me, susceptible of but one answer: No.[60]  It is on this basis that, post-Ellerth and Faragher, I would affirm the district court's grant of summary judgment in favor of Freeman.[61]  More to the point, I perceive no other legitimate basis for affirming that court.

---

[58]  See Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 555 (5th Cir. 1997) (holding official, who stared at female plaintiff, made suggestive comments to her, and slammed her door, was entitled to qualified immunity because his conduct was not severe or pervasive enough to constitute sexual harassment).

[59]  See Harris, 510 U.S. at 19, 21-23; Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 805-06 (5th Cir. 1996).

[60]  See DeAngelis v. El Paso Mun. Police Officers Assoc., 51 F.3d 591, 595-96 (5th Cir. 1995) (holding ten columns in association newsletter containing derogatory statements about women, only four of which referred to plaintiff, could not alone amount to actionable sexual harassment); Long v. Eastfield College, 88 F.3d 300, 309 (5th Cir. 1996) (single offensive joke did not support claim for hostile work environment).

[61]  Although Judge Jones purports to assume arguendo and therefore not decide whether Indest was subjected to a sexually hostile work environment, she concludes (as do I): "As far as the entire context of Indest's employment with Freeman is concerned, [], Arnaudet's misbehavior was neither severe nor pervasive." Jones Op. at 264.

I offer one final observation which likely explains the overarching premise of Judge Jones's struggle with this case —— her candidly expressed concern that, if the Ellerth/Faragher test applies to cases such as this one, "[v]icarious liability would amount to strict liability even though the plaintiff had neither a severe or pervasive change in her working conditions nor any adverse employment action."[62] I find Judge Jones's fear as unwarranted as it is inaccurate, for at least two reasons. First, to (re)state the obvious, absent "any adverse employment action," i.e., any tangible employment action, an employer is never vicariously liable for a supervisor's conduct unless such conduct is either severe or pervasive, for employers are strictly liable only for actionable sexual harassment on the part of their supervisory employees. Thus, Judge Jones forecasts a legally impossible result. The Supreme Court has decreed —— as is its prerogative —— that when such supervisor harassment produces a tangible employment action, agency principles dictate precisely the result that Judge Jones abhors, i.e., strict liability and no affirmative defenses. But, absent a tangible employment action, the supervisor's sexually opprobrious conduct must be either severe or pervasive to be actionable in vicarious liability. Ergo, the employer can never be vicariously liable in the hypothetical situation that so disturbs Judge Jones: (1) No severe or pervasive

---

[62]     Id. at 266.

sexual misconduct and (2) no tangible employment action. Her chimera evanesces in the cold light of day, logic, and pure legal analysis.

Second, this case demonstrates why, as a practical matter, inappropriate sexual conduct will virtually never rise to the level of actionability when an employer takes the kind of prompt remedial action that Judge Jones applauds (as do we all). Here, Freeman's timely and effective response to Indest's complaints cut Arnaudet's sexual misconduct off at the pass, preventing him from either subjecting Indest to additional sexual comments and gestures or escalating his inappropriate behavior to more egregious forms or levels of misconduct. In other words, Freeman's sexual harassment grievance procedure worked exactly as designed by Freeman and as envisioned by the Equal Employment Opportunity Commission — and as now envisioned by the Supreme Court in tempering strict agency principles — the "stick" — with an overlay of deterrent policy — the "carrot." Indest's case well illustrates that, when an employer satisfies the first element of the Supreme Court's affirmative defense, it will likely forestall its own vicarious liability for a supervisor's discriminatory conduct by nipping such behavior in the bud. When that happens, neither the employer nor the court need ever reach the question posed by the (b) element of the Court's affirmative defense, i.e., whether the plaintiff unreasonably failed to take advantage of any corrective opportunities, because the employer will have prevented the

44

supervisor's behavior from rising to the severe or pervasive level required to be actionable under Title VII.[63]

## III.
## Conclusion

Since June 26, 1998, when Justice Kennedy filed his majority opinion in Ellerth,[64] and Justice Souter filed his majority opinion in Faragher,[65] the methodology mandated for all inferior federal courts to follow in disposing of vicarious liability claims against employers, grounded in sexual harassment perpetrated by supervisory employees, has been unmistakable and easily fathomable. For openers, the Court obviously selected and paired Ellerth and Faragher. One (Ellerth) presents a stereotypical example of one supervisor "hitting on" one subordinate employee for sexual favors while actually or impliedly threatening employment retaliation unless (or promising employment benefits if) the subordinate "comes across." The other (Faragher) presents an equally stereotypical example of several supervisors' making crude, offensive,

---

[63] It is, of course, theoretically possible for a supervisor to engage in sufficiently severe conduct (e.g., raping, "flashing," or forcibly groping or disrobing the subordinate employee) in such a short period of time that, even though (1) the employee reports the conduct immediately, (2) the employer takes swift and decisive remedial action, and (3) no tangible employment action ensues, the employer could still be held vicariously liable under the Ellerth/Faragher "severe or pervasive" test. Whether or not Judge Jones or I would agree with such a result, we remain bound by the Supreme Court's judgment in the matter.

[64] Justice Ginsberg concurred in the judgment, and Justices Scalia and Thomas dissented.

[65] Justices Scalia and Thomas dissented.

45

insensitive, and boorish comments, and taking discriminatory actions, of a sexual nature, which in combination produce a working environment that cannot or should not be tolerated by subordinate employees.[66]

With these complementary fact patterns as its backdrop, the Court begins its didactic exercise by defining —— in some instances, redefining —— terms of art for use when addressing such vicarious liability claims: "Supervisor" continues to mean the same thing that it meant under pre-Ellerth/Faragher jurisprudence; "tangible employment action" is now the universal term of art for any change in the terms or conditions of the subordinate's employment, initiated or imposed by or on behalf of the employer and requiring an official act of the employer, such as hiring, firing, demoting, and so forth;[67] "quid pro quo" is redefined, henceforth to identify that type of vicarious liability supervisor sexual harassment claim in which a tangible employment action is taken and there is a nexus between the supervisor's sexual misconduct and the tangible employment action experienced by the employee;[68] "hostile work environment" is redefined, henceforth to identify that type of vicarious liability supervisor sexual

---

[66]   Since the Court's majority opinion in Oncale, 118 S. Ct. 998, any question that the supervisor and the subordinate employee had to be of opposite sexes to be actionable has been eliminated.

[67]   See supra note 19.

[68]   See supra note 4.

46

harassment claim in which the sexually harassed employee has not experienced a tangible employment action —— whether or not one had been threatened;[69] "actionable" sexual harassment by a supervisor is conduct that alters the terms or conditions of the subordinate's employment, and clearly violates Title VII, by either (1) resulting in a tangible employment action (thus explicitly altering the terms and conditions of employment) or, (2) in the absence of a tangible employment action is so severe or pervasive as to alter implicitly the terms and conditions of the subordinate's employment; "severe or pervasive" continues to describe a supervisor's course of sexual misconduct or the kind of work place such conduct produces, that, as under pre-Ellerth/Faragher jurisprudence, rises above the merely offensive and boorish and enters the realm of sexual misconduct, and the work environment created by such conduct, that no employee should be expected to tolerate;[70] and "vicarious liability" continues to have its traditional meaning in the context of master-servant or principal-agent law ("traditional agency principles") which imposes liability on the master or principal for various acts or omissions of its servant or agent, without any requirement of fault on the part of the master or principal, i.e., strict liability, liability without fault, or respondeat superior.

---

[69]    See id.

[70]    Harris, 510 U.S. at 21 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment —— an environment that a reasonable person would find hostile or abusive —— is beyond Title VII's purview.").

47

With that glossary firmly established, the Court proceeds to confect the road map to be followed by district and appellate courts when addressing any vicarious liability claim against employers for a supervisor's sexual harassment of a subordinate employee. Once the court in question determines that the litigation before it is of that ilk, the road depicted on the Supreme Court's map forks: One branch is to be followed by inferior courts when considering a case that includes allegations of a tangible employment action, now dubbed a "quid pro quo" case; the other branch is to be followed by such courts when considering a case that does not contain allegations of a tangible employment action, now dubbed a "hostile work environment" case.

When the judicial journey proceeds along the "quid pro quo" branch of the forked road and leads to a plaintiff-employee who meets his burden of proving that (1) the defendant is his employer, (2) the harasser is a supervisor, (3) the plaintiff was sexually harassed by the supervisor, and (4) a tangible employment action resulted, the employer is vicariously liable per se, according to agency principles as reflected by § 219 of the Restatement, and cannot assert any affirmative defenses.

Similarly, when, because the plaintiff has not alleged a tangible employment action, the court's journey proceeds along the "hostile work environment" branch of the road, and leads to a plaintiff-employee who meets his burden of proving that (1) the defendant is his employer; (2) the harasser is a supervisor, (3) he

48

was sexually harassed by the supervisor, and (4) the supervisor's conduct is actionable, i.e., produces a work environment that is either severe or pervasive, the employer is subject to vicarious liability. But, unlike the employer in cases that follow the quid pro quo branch of the road, the vicariously liable employer in the non-tangible employment action (hostile work environment) case is allowed by the Court, for Title VII policy reasons, to depart from strict agency principles and advance one –– but only one –– affirmative defense: The two-element, conjunctive defense comprising exercise by the employer of reasonable care to prevent and correct the sexually harassing behavior <u>and</u> the unreasonable failure of the plaintiff-employee to take advantage of the employer's preventive or corrective opportunities or to avoid harm otherwise. Only if such an employer is successful in proving both elements of this unique affirmative defense can responsibility for a supervisor's actionable sexual harassment be avoided.

The pellucid teachings of the Court are easy to apply in the instant case: We look first and foremost for a "tangible employment action" against Ms. Indest. Finding none, we know we are to follow the branch in the analytical road reserved for the newly-labeled "hostile work environment" category of supervisor sexual harassment. When we take that path, though, we must remain mindful that (1) Arnaudet's conduct and its results are "actionable" only if they are severe or pervasive; and (2) if we conclude that they are, Freeman

49

is vicariously liable unless it can prove <u>both</u> elements of the <u>Ellerth</u>/<u>Faragher</u> two-pronged, affirmative defense.

The undisputed facts that bear on the second element of that affirmative defense prove conclusively that, by immediately objecting to, reporting, and pursuing — as far up the chain of command as was necessary — the offending conduct of Arnaudet, Ms. Indest did <u>not</u> "unreasonably fail[] to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."[71] As such, Freeman cannot advance this (or any other) affirmative defense to escape liability, regardless of the single fact employed by Judge Jones as the sole <u>ratio decidendi</u> for her disposition of the case — that Freeman exercised reasonable care to prevent and correct promptly Arnaudet's offensive behavior.

I end, therefore, where I believe that this panel should have ended, with what ought to be the second and deciding question of this case: Having answered in the negative the initial question whether a tangible employment action was taken against Indest, we should here inquire next whether the situation created by Arnaudet's sexual misconduct was sufficiently severe or pervasive to be actionable. The record of this appeal leaves no doubt that this question must be answered in the negative: Arnaudet's remarks and gestures were clearly crude, offensive, and boorish, and his overt

---

[71] <u>Ellerth</u>, 118 S. Ct. at 2270; <u>Faragher</u>, 118 S. Ct. at 2293.

and implied (but unfulfilled) threats of an adverse employment action were inappropriate to say the least. But when they are viewed in light of all traditional factors for testing the severity or pervasiveness of such conduct, neither the conduct nor the work environment it produced was actionable.

As the district court decided this case without benefit of the Supreme Court's subsequent tutelage in <u>Ellerth</u> and <u>Faragher</u>, it could not have considered the case within that framework; it did not have the benefit of the Court's new road map. But we do and we must follow it. Thus, I would affirm the court's j.m.l. that dismissed Indest's vicarious liability claims against Freeman, but would not do so because Freeman had appropriate policies in place and acted promptly and effectively after learning of Arnaudet's behavior. Indeed, Indest's equally prompt and appropriate responses stymies Freeman's entitlement to assert the only affirmative defense potentially available. Rather, I would affirm because the inappropriate conduct of the supervisor, Arnaudet, does not rise to the level of "severe or pervasive," and thus is not actionable for purposes of vicarious liability.